## Ditko Appeal

*Albert S. Readinger* and *Samuel R. Liener*, for ap-appellant.

*Daniel H. Huyett, III*, for appellee.

HESS, J., October 11, 1955.—Joseph Ditko, a police officer of the City of Reading, was charged by the mayor with conduct unbecoming a police officer. A hearing was held by city council, and thereafter, by resolution which was unanimously adopted, council

adjudged Officer Ditko guilty of the charges preferred against him and ordered his dismissal effective September 15, 1954. An appeal was filed, testimony taken and the matter has been argued on briefs submitted by counsel.

The charges preferred against appellant, as set forth by the mayor, the director of the department of public affairs, are contained in exhibit I and are as follows:

"1. That on August 29, 1954, at approximately 3:30 a.m. (D.S.T.) and in premises 744 Penn Street, City of Reading, Pennsylvania, the said Joseph Ditko engaged in conduct unbecoming of a police officer of the City of Reading.

"2. That on or about December 30, 1953, and in premises 402 Penn Street, City of Reading, Pennsylvania, in respect to a certain conversation with Albert DaDamio engaged in conduct unbecoming of a police officer of the City of Reading."

The procedure relating to the discharge of civil service employes of third class cities is set forth in section 4408 of the Act of June 28, 1951, P. L. 662, art. XLIV, sec. 4408, 53 PS §12198-4408, and provides that "All employes subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employes. On hearing before the city council, where they may be represented by counsel, they may be fined or suspended for a period not exceeding thirty days with or without pay, or they may be discharged by city council, if found guilty of the charges made against them. The director of each such department may, for misconduct or violation as aforesaid, suspend any employe of such de-

partment for a period of ten days, with or without pay, without preferring charges and without a hearing of council: Provided, however, That if it should become necessary to reduce the number of men in said department for purposes of economy, seniority rights shall prevail, and any and all removals for such cause or causes shall be from the members last appointed, and the members or members serving the shortest time shall be removed first; but members with longer times of service may be discharged for cause.

"Any civil service employe aggrieved by the action of the council in fining, suspending or discharging him shall have the right to appeal by petition to the court of common pleas within thirty days after receipt of written notice of such action which it shall be the duty of the council to give and the court shall hear the charges made against him de novo. The issue before the court shall be whether the action of the council shall be affirmed or be modified in any respect or whether the charges should be dismissed. Where any such employe has been suspended by action of council and the charges are dismissed on appeal, he shall receive full compensation for the entire period of suspension."

The incident relating to conduct unbecoming a police officer set forth in the second charge resulted in appellant's being warned, reprimanded and suspended without pay by his superior officers for a period of five days. Were this the only charge considered by council and established under the evidence, we would hesitate in finding that appellant was properly discharged. It is apparent that for the offense in question, appellant has already been punished, and it would offend against our concept of justice that a year thereafter appellant could be subjected to the penalty of dismissal after having previously been suspended for his actions. The service record of appellant showing prior misconduct

and suspension is relevant and admissible, however, insofar as it may relate to proper punishment in the event appellant is guilty of the misconduct alleged in the first charge: Poerio Appeal, 3 D. & C. 2d 79; In re Brosious Appeal, 22 Northumb. 193. It would appear that appellant accepted without question the punishment meted to him by his superiors for the act of misconduct alleged in the second charge, and in our opinion that incident thereafter was closed and is only relevant in the matter of determining what punishment is merited for offenses subsequent thereto. We can understand that council, nevertheless, might elect to consider the facts relating to the charge of misconduct for which appellant was previously punished and might conceivably find them not supported by the evidence even though appellant's superior officers had previously adjudged him guilty and imposed punishment.

The remaining allegation of misconduct relates to an incident which occurred on August 29, 1954. According to the testimony offered by the city, Officer Ditko, while he was on duty as a police officer, was for a period of time in a women's toilet room behind a locked door with a woman at the premises 744 Penn Street, Reading. The city contends that the circumstances indicate that the officer and the woman were together in the room for an improper purpose. Appellant admits that he was present in the room in question, but contends that he went there alone because the men's toilet room was too dirty and filthy to warrant his using it. He further contends that while he was in the room the woman came into the toilet room without knowing that he was there, and that nothing improper took place or was in any way indicated by the incident.

It is not disputed that appellant and the woman were in the room in question behind a locked door.

What, if anything, occurred is known only to two people. Certainly, if the testimony of appellant and the woman in question is correct as to what took place, then the officer has been the victim of an unfortunate set of facts. On the other hand, if appellant and the woman went there together or met there for an improper purpose, then appellant's actions warrant a conclusion that his conduct was unbecoming a police officer.

While the Act of 1951, supra, provides that the "court shall hear the charges made against him (the policeman) de novo," we cannot understand that the court may substitute its discretion for that of the municipal officers if the evidence produced at the hearing supports the discretion exercised by council. "When there is sufficient and competent evidence presented before the Court at the hearing de novo which would indicate that the Council has not abused its discretion the Court cannot set aside the action of a duly elected and deliberate body. No Court should interfere with local administrative bodies unless there has been a flagrant abuse of discretion or a violation of the law. The Council of the City of New Kensington is a body clothed with judicial, deliberate and discretionary powers in matters pertaining to the police department, and where it has exercised such powers without abusing its discretion its acts cannot be modified or set aside by the Courts.": Spinelli v. City of New Kensington, 33 Westmoreland 49, 51. On the other hand, there must be substantial evidence and not merely suspicious circumstances to warrant the disciplinary action here in question. "A police officer must be protected and his position preserved against unfounded attack. No officer should be dismissed from service unless it is for *just* cause, not only charged but proven by substantial evidence. His position cannot be jeopardized by mere suspicious circumstances.":

Philadelphia Civil Service Commission v. Connolly, 1 D. & C. 2d 399, 423. Our problem is to determine in this case whether the evidence indicates "just cause" or "suspicious circumstances".

The credibility of the witnesses and proper inferences from their testimony are paramount in resolving the issue in this case. No witness from the city can testify that anything improper took place between appellant and the woman in the ladies' toilet room. From the unusual circumstances, it is contended that a reasonable inference would warrant a finding that appellant and the woman in question are not telling the truth. It would appear that at least one of them is not telling the whole truth. According to the record, pages 51 and 55, appellant testified in effect that while he had seen the woman on the street and had talked to her, he did not know her name and had never been with her socially. The woman testified that on one occasion appellant in company with another officer had driven the woman and her sister to their home. It is true that appellant may not have considered this episode a social engagement, but at least it would indicate more than a "passing acquaintance" with the woman which is beyond the extent indicated by appellant's testimony. In the light of this testimony, it is difficult to understand how coincidentally at approximately 4 a.m. the two individuals could just happen to be together behind the locked door of a ladies' rest room. It is also difficult to accept the testimony in which both concur that when the presence of the other was discovered there was no conversation between them. Appellant states that he used a key to unlock the outer door of the rest room, but made no attempt to check whether the door was locked after he entered the room. Lieutenant Clemmens testified that a day or two after this incident he checked the room and the door and that he unlocked the door with a key, opened the door

and permitted it to swing shut without applying any pressure. On each occasion it swung shut and the key was required to unlock it from the outside. In the light of this testimony it is difficult to understand how a woman without a key could enter the rest room while appellant was inside unless she entered with him or was admitted by him.

The circumstances and reasonable inferences from testimony warrant a fact-finding body in concluding that there is substantial evidence to justify a conclusion that appellant was guilty of conduct unbecoming a police officer. The facts are much stronger against appellant than were the facts against the police officer in the case of Philadelphia Civil Service Commission v. Connolly, supra. In that case the officer was charged with having received a suit of clothes as a gift from a known gambler, and the only evidence against him was a sales slip and ledger card of a retail clothing establishment reflecting the sale of a suit to the officer, the payment being charged to the gambler. The salesman testified that he never saw the officer or sold a suit to him. The court in sustaining the appeal quite properly indicated, page 424:

"If we sustained the dismissal in the instant case it would create a precedent which might enable evilly disposed persons to deliberately involve good police officers in similar situations without their knowledge and cause their removal from the force."

Such is not the situation in the case before us where appellant clearly created the circumstances which point to his guilt.

In hearing and weighing the evidence against appellant city council sat as a deliberative, fact-finding body. While the court is charged with hearing the testimony de novo, we conclude that we are required to sustain the finding of city council if the evidence before the court would warrant a finding similar to that

made by council. Unless the evidence be such that if the case were being tried by a jury the court would be required to enter a nonsuit, enter judgment n. o. v. or sustain a demurrer, the court is required to affirm the findings of the city council even though the court as an independent fact-finding body might conclude otherwise. The discussion in the opinion of Judge Davis in Philadelphia Civil Service Commission v. Connolly, supra, pages 422-423, supports our holding in this respect.

Accordingly, we conclude that council was justified in finding appellant guilty of misconduct arising out of the incident of August 29, 1954. We have not considered the other incident in determining whether the charge in question should be sustained for the reason that, as was previously indicated, we have decided that appellant has already been punished for that transgression by a five-day suspension. After reaching a conclusion that the charge of conduct unbecoming an officer relative to the incident of August 29, 1954, is sustained by the evidence, we have considered the previous suspension in determining what punishment is appropriate: See Peorio Appeal, supra. The Council of the City of Reading has unanimously decided that appellant's conduct is just cause for dismissal. "The court cannot substitute its judgment, as to what should be just cause, for that of the city authority, unless there is a manifest abuse of discretion; . . .": Shellenberger v. Warburton, 279 Pa. 577, 580. See also Smith v. Philadelphia, 305 Pa. 503; Bradycamp v. Metzger, 310 Pa. 320.

In spite of the fact that the matter is before us de novo, the court should not lightly set aside an order of dismissal rendered at the hands of a duly-elected and constituted body of public officials who are charged with conducting the affairs of the police department

and maintaining necessary discipline so as to assure the functioning of the vital protection of an efficient police force. We conclude that the action of the Council of the City of Reading in dismissing Joseph Ditko from his employment as a police officer in the City of Reading should be affirmed.

### Order

And now, to wit, October 11, 1955, the appeal of Joseph Ditko is dismissed.